

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 0 2 2006

at ___ o'clock and 10 min. P M
SUE BEITIA, CLERK

RANDY OYAMA, #5767
Attorney at Law
888 Mililani Street, PH2
Honolulu, Hawaii  96813
Telephone:      (808) 521-9840
Facsimile:      (808) 536-7816

Attorney for Defendant
GISELA JUDITH ROCHIN-GAXIOLA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO.  05-00391HG-02 |
| Plaintiff, | ) MOTION FOR ADJUSTMENT TO |
| | ) GUIDELINE RANGE AND DOWNWARD |
| vs. | ) DEPARTURE |
| GISELA JUDITH ROCHIN-GAXIOLA, | ) DATE:    March 23, 2006 |
| | ) TIME:    3:34 p.m. |
| Defendant. | ) JUDGE:   Helen Gillmor |

**MOTION FOR ADJUSTMENT TO GUIDELINE
RANGE AND DOWNWARD DEPARTURE**

Defendant, Gisela Judith Rochin-Gaxiola, by and through her counsel, Randy Oyama, Esq., respectfully files the following items for consideration for adjustment and/or downward departure.

1. **Defendant's Mitigating Role in the Offense Justifies an Adjustment**

Defendant is entitled to a four level reduction for her role in the offense. At the very least her limited role as a courier under the circumstances of this case warrants a two-level reduction.

Application Note 2 to Section 3B1.2 states that a mitigating role adjustment "would be appropriate . . . where an individual

was recruited as a courier for a single smuggling transaction involving a small amount of drugs." Although it is clear that this reduction is not automatic, the "issue is whether the defendant is 'substantially less culpable' than his co-conspirators." United States v. Rossy, 953 F.2d 321, 326 (7th Cir. 1992). As the Second Circuit has stated, "[t]he culpability of a defendant courier must depend necessarily on such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." United States v. Garcia, 920 F.2d 153, 155 (2nd Cir. 1990). Given the facts of this case, Client is entitled to a two or four-point reduction for his role in the offense. See United States v. Foley, 906 F.2d 1261 (8th Cir. 1990)(defendant received two-level reduction for role in the offense despite her participation in four actual sales of cocaine and the fact that she was the direct recipient of the purchase price in two of those transactions).

As a "drug courier" or "mule," Defendant as compared to other members of the organization, occupied the most insignificant role in a highly sophisticated conspiracy to traffic narcotics from Mexico to the United States.

To illustrate the sophistication of the organization consider the following:

1) Defendant was targeted for recruitment by the organization. At the time of her recruitment, Defendant was 19 years old, had just been asked to leave her family house by her father, and was desperate for money. Defendant as a young and financially desperate woman, fit the profile of a person who would be willing to act as a "mule" in exchange of the promise of fast cash. An organization that profiles and recruits its drug carriers demonstrates its sophistication.

2) The operations of the organization was designed to avoid law enforcement for its leaders or organizers. After her recruitment, Defendant who never actually saw the organizers or leaders of the conspiracy was given a Nextel phone and was instructed by its organizers or leaders.

Defendant was instructed, step by step, what to do through the Nextel. Defendant was told to pickup an electronic ticket at the airport, travel to Honolulu, and call upon her arrival. Defendant would call the pre-set numbers on the phone and received further instructions. Defendant would be told to meet people at certain locations and deliver/pickup packages, etc. An organization must shield the identity of its leaders

from those at risk, i.e., the "mules," for the purpose of avoiding law enforcement requiring tremendous effort and planning and demonstrates the organizations sophistication.

3) The organization utilized elaborate measures to gain intelligence regarding its drug couriers. When Defendant, as well as her Co-Defendant, turned companion, was arrested, attorneys were apparently retained by the organizations leaders to represent them in court. The attorneys spoke to the Defendants, reported back to the leaders of the organization but were never paid the money by the organization. It appears that this tactic by the organization was its means of acquiring information regarding the arrests of its mules. Such a tactic is indicative of a highly sophisticated organization.

4) The methods used (withholding payment and threats of violence) by the organization to "motivate" its couriers to continue their duties demonstrates the sophistication of the organization and the futility of being the mule. When targeted by the organization, Defendant was motivated by the lure of easy cash. Having performed her duties on the first trip, the organization withheld the payment promised to

Defendant. Defendant was told that she would be paid after the next trip. On the second trip, Defendant was told via the Nextel to immediately go to the airport and return to Los Angeles. Defendant was concerned by the unexpected return and decided that she did not want to continue as a courier. When Defendant informed the organization that the past trip would be her last, she was told by the organization that if she did not continue to be a courier, harm would come to her family. To add credence to the threats, family members names and addresses were revealed. As a result of the threats made to her family, Defendant continued to act as a courier.

Defendant was recruited by a highly sophisticated organization to traffic narcotics. As shown above, the organization manipulates its couriers to act as couriers by making idle promises to pay the courier. If a courier wants to withdraw from the organization, the courier is coerced into serving by threats made to the couriers family. Safeguards to protect the organization and its leaders are in place. In short, the organization uses its couriers like pawns fully expecting them to eventually be caught. As compared to the leaders of the organization, Defendant's role is truly minimal and should receive a mitigating role adjustment.

2.   **Request for Downward Departure**

A.   **Defendant Is Entitled To A Downward Departure Based Upon Coercion and Duress.**

U.S.S.G. § 5K2.12 states that:

> If the Defendant committed the offense because of serious coercion or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

In this case, Defendant informed the organization of her intentions to cease activity as a courier for the organization after she returned to Los Angeles from the second trip to Hawaii. At that time, Defendant was worried based upon her unexpected, leave your suitcase behind, order from the organization to return immediately to Los Angeles. Defendant was also not fully paid for her trips to Hawaii which made her decide to stop acting as a courier.

In response to learning of Defendant's intention to stop acting as a courier, the organization threatened physical harm to Defendant's family in Culiacan, Mexico. The organization let Defendant know that they were aware of who her family members

6

were and where they lived. Defendant was told that family members would be killed if she did not continue as a courier.

Afraid for her families physical well being, Defendant decided to continue to do as the organization ordered, and traveled to Hawaii 2 more time, the second of which, she was arrested.

In speaking with Special Agent Jasen Alznauer, Agent in charge of this investigation, he indicated that he is aware that this organization employs duress as a means of achieving its objectives.

Defendant had to decide to continue to act as a courier or to risk physical harm to her family members. Defendant chose to act as a courier. Half of Defendant's relevant conduct occurred after she was told about the consequences of withdrawing from the organization. Based on this, Defendant should receive a substantial departure based on the organizations use of coercion and duress.

DATED: Honolulu, Hawaii, March 2, 2006.

_____
RANDY OYAMA
Attorney for Defendant
GISELA JUDITH ROCHIN-GAXIOLA

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document will be served upon the following party (ies) upon the filing hereof by:

[X]  Hand-Delivery,  or  [ ] U.S. mail:

MARK A. INCIONG, ESQ.
ASSISTANT U.S. ATTORNEY
RM. 6-100, Box 50183
Honolulu, Hawaii 96850

Rosanne T. Donohoe
United States Probation Officer
300 Ala Moana Blvd., Room C-110
P. O. Box 50111
Honolulu, Hawaii 96850-0001

DATED: Honolulu, Hawaii, March 2, 2006.

_____
RANDY OYAMA
Attorney for Defendant
GISELA JUDITH ROCHIN-GAXIOLA